IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NEXUS DISPLAY TECHNOLOGIES LLC, | § § § | Civil Action No: 2:14-cv-00762-RWS (Lead Case) |
| Plaintiff, | § § | |
| v. | § § | **Jury Trial Requested** |
| DELL INC., | § § § | |
| Defendant. | § | |
| NEXUS DISPLAY TECHNOLOGIES LLC, | § § § | Civil Action No. 2:14-cv-00763-RWS (Consolidated Case) |
| Plaintiff, | § § | |
| v. | § § | **Jury Trial Requested** |
| LENOVO (UNITED STATES) INC., | § § § | |
| Defendant. | § | |

**DEFENDANT LENOVO (UNITED STATES) INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

PAGE(S)

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................2

    A. Nexus, the Inventors, and the Prosecuting Attorneys Have Substantial Connections to N.D. Cal., Not E.D. Tex. ....................................................2

    B. Relevant Third Parties Have Substantial Connections to N.D. Cal. ........................4

        1. The DisplayPort Standard Was Developed and Is Administered in N.D. Cal., Not E.D. Tex. ............................................................4

        2. The DisplayPort Suppliers Are Located in N.D. Cal. ................................5

III. LEGAL STANDARD ..............................................................................................6

IV. ARGUMENT ............................................................................................................7

    A. This Dispute Could Have Been Brought in N.D. Cal. ..............................................7

    B. The Private Interest Factors Favor Transfer to N.D. Cal. .......................................7

        1. Location of Sources of Proof Favors Transfer to N.D. Cal. ..........................7

            (a) Most relevant documents reside in N.D. Cal. .................................8

            (b) Prosecution documents regarding the patents-in-suit are located in N.D. Cal. .......................................................................8

            (c) Nexus's contacts with E.D. Tex. are recent, ephemeral, and an artifact of litigation. ........................................................9

        2. The Compulsory-Process Factor Weighs Heavily in Favor of Transfer. .................................................................................................10

        3. N.D. Cal. Is More Convenient for Willing Witnesses ..............................10

        4. No Practical Concerns Favor This District Over N.D. Cal. .......................11

    C. The Public Interest Factors Favor Transfer. ............................................................12

        1. N.D. Cal. Has a Substantial Connection to, and Local Interest in, the Adjudication of this Case. ................................................................12

        2. The Remaining Public Interest Factors Are Neutral. ................................12

    D. Nexus's Choice of Forum Is Not Entitled to Deference. .......................................13

V. CONCLUSION .......................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Digital Reg of Texas LLC v. Adobe Sys. Inc., et al.*,
   slip. op. (E.D. Tex. Mar. 28, 2012) ................................................................................8

*Droplets, Inc. v. E*TRADE Fin. Corp.*,
   2012 U.S. Dist. LEXIS 111694 (E.D. Tex. Mar. 5, 2012) .........................................6, 7, 11, 13

*EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*,
   2012 U.S. Dist. LEXIS 9545 (E.D. Tex. Jan. 9, 2012) ...........................................................10

*In re EMC Corp.*,
   2013 U.S. App. LEXIS 1985 (Fed. Cir. Jan. 29, 2013) ..........................................................12

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ...............................................................................................11

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011)) .............................................................................................10

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ...............................................................................................11

*In re TS Tech. USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ...........................................................................................6, 13

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*") ...............................................................6, 7, 12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ............................................................. *passim*

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ............................................................................................9, 13

*KlausTech, Inc. v. AdMob, Inc.*,
   Docket No. 50, Memorandum Opinion and Order on Motion to Transfer at 3 (E.D.
   Tex. Nov. 30, 2010) .................................................................................................................10

*NovelPoint Learning LLC v. LeapFrog Enter., Inc.*,
   2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ..........................................................................10

*PersonalWeb Techs., LLC v. NEC Corp. of Am.*,
   2013 U.S. Dist. LEXIS 46296 (E.D. Tex. Mar. 21, 2013) .................................................13, 14

*Rock Bit Int'l, Inc. v. Smith Int'l., Inc.*,
    957 F. Supp. 843 (E.D. Tex. 1997) ...................................................................................... 14

*Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
    2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) ...................................................................... 8

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ................................................................................................................ 6

*Technologies Web Techs, LLC v. NEC Corp. of Am., Inc.*,
    2013 U.S. Dist. LEXIS 46296 (E.D. Tex. Mar. 21, 2013) .................................................. 14

*TV-3, Inc. v. Royal Ins. Co. of America*,
    28 F. Supp. 2d 407 (E.D. Tex. 1998) ................................................................................... 14

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
    2010 U.S. Dist. LEXIS 69536 (E.D. Tex. July 13, 2010) .................................................... 10

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .............................................................................................................. 6

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
    2014 WL 459719 (E.D. Tex. Jan. 31, 2014) ......................................................................... 7

**STATUTES**

28 U.S.C. § 1391(c) ....................................................................................................................... 7

28 U.S.C. § 1400(b) ....................................................................................................................... 7

28 U.S.C. § 1404(a) ..................................................................................................... 1, 6, 7, 13

206317812

Defendant Lenovo (United States) Inc. ("Lenovo") moves to transfer this case to the Northern District of California ("N.D. Cal.") for further proceedings under 28 U.S.C. § 1404(a). This case has no ties to the Eastern District of Texas ("E.D. Tex.") that would favor maintaining the case here. Lenovo also understands that Dell Inc. ("Dell"), in this consolidated case, has moved to transfer to N.D. Cal. (Motion to Change Venue by Dell Inc., *Nexus Display Technologies LLC v. Dell Inc.*, Case No. 2:14-cv-00762-RWS) (filed Jan. 22, 2015) (Dkt. 64). Transfer is warranted in this case under § 1404(a) and applicable Fifth and Federal Circuit precedent for at least the following reasons: (1) the vast majority of material witnesses are located in N.D. Cal.; (2) the evidence is located in N.D. Cal. and cannot be as readily accessed from this District; and (3) Nexus's purported presence in E.D. Tex. is merely its effort to manufacture venue. Moreover, the public interest factors for determining whether to transfer a case from one district to another either weigh in favor of transfer or are neutral. Accordingly, Lenovo respectfully requests that its case also be transferred to N.D. Cal.

**I.    INTRODUCTION**

Plaintiff Nexus Display ("Nexus") filed its complaint for patent infringement against Lenovo on July 11, 2014. This forum, however, has no logical nexus with this case. The witnesses with knowledge regarding the manufacture, design, and sale of the accused technology are not in this District. Instead, they are in N.D. Cal. where the named inventors and Lenovo's suppliers of the accused technology reside. Access to these witnesses and evidence in their possession is crucial to establishing Lenovo's defenses, but this Court does not have absolute subpoena power necessary to compel full access to that evidence. Even Nexus has no real presence in E.D. Tex.: it was incorporated just a month before filing this lawsuit, its office was unstaffed, and it recorded its receipt of the patents-in-suit by assignment almost two months **after** filing this lawsuit.

In its Infringement Contentions served on November 3, 2014, Nexus alleges that Lenovo's products infringe the patents-in-suit through the incorporation of components supplied by third-parties that provide DisplayPort technology. Lenovo does not design or manufacture the

components that provide this accused functionality.  Instead, the accused technology is incorporated into the Accused Products through graphics and video components that are supplied by third parties including Intel Corp. ("Intel"), AMD, Inc. ("AMD"), and NVIDIA Corp. ("NVIDIA") (collectively, "DisplayPort Suppliers").  Accordingly, Lenovo does not possess most of the technical information regarding their function, operation, design, or development of the allegedly infringing components.  Lenovo does not have any relevant witnesses located in E.D. Tex. who are knowledgeable about the accused technology.  The witnesses who do have such knowledge and information include the engineers and employees of the DisplayPort Suppliers, all of whom are located in N.D. Cal.  Also, in N.D. Cal. are other key witnesses, including 11 of the 12 named inventors and four prosecuting attorneys on the patents-in-suit.

The trial of this case, therefore, will rely heavily on evidence and witnesses located in N.D. Cal.  Consequently, this case should be transferred to N.D. Cal., where the court would have the power of compulsory process to summon the relevant third-party witnesses.  For these reasons, Lenovo respectfully requests that the Court transfer this case to N.D. Cal.

## II.     FACTUAL BACKGROUND

On July 11, 2014, Nexus filed a complaint for patent infringement against Lenovo claiming that Lenovo infringed U.S. Patent Nos. 7,295,578, 7,599,439, 5,835,498, and 7,143,328 ("the patents-in-suit").  Nexus has accused over 50 Lenovo products, including displays, monitors, desktops, workstations, and laptops ("Accused Products") of infringing the patents-in-suit, merely because the products "comply with the DisplayPort standard."  (Ex. A at 2.)

### A.     Nexus, the Inventors, and the Prosecuting Attorneys Have Substantial Connections to N.D. Cal., Not E.D. Tex.

Although registered to do business in Texas, Nexus appears to be a non-practicing entity created solely for the purpose of enforcing and monetizing the patents-in-suit.  Nexus filed its Certificate of Formation on June 12, 2014- just 30 days before filing lawsuits against Lenovo and other defendants including Panasonic (Case No. 2:14-cv-00764-RWS), Eizo (Case No. 2:14-cv-00765-RWS), and NEC (Case No. 2:14-cv-00766-RWS).  (Ex. B.)

Nexus is controlled by Acacia Research Group, LLC ("Acacia").  *Id*.  Acacia is headquartered in Newport Beach, California but purports to maintain an office in Plano, Texas.  *Id*.  That same office – at 2400 Dallas Parkway, Suite 200 – is identified as Nexus's principal place of business.  (Ex. N.)  The only known employee of Nexus is Jennifer Graff (Ex. C.) who publicly identifies herself as an employee of Acacia Research Corp. in Newport Beach,—not Plano.  (*See* Declaration of Eric J. Klein in Support of Motion to Transfer Venue ("Klein Decl.") at ¶ 4.)  With no apparent employees in its "home" office in Plano, Nexus does not appear to have any meaningful contact with E.D. Tex.

The patents-in-suit themselves are inseparably connected to California, not Texas.  The patents-in-suit were all previously owned by Silicon Image Inc. ("Silicon Image"), a Delaware corporation with headquarters located in Sunnyvale, California.  (Klein Decl. at ¶ 5.)  The assignment of the patents-in-suit from Silicon Image to Acacia Research and from Acacia Research to Nexus was recorded at the USPTO almost two months **after** this lawsuit was filed.  (Exs. D-G.)  So at the time the lawsuit was filed, Silicon Image, a corporation with headquarters in N.D. Cal., is likely to possess information regarding the valuation, licensing, and prosecution of the patents-in-suit.

The named inventors of the patents-in-suit also have substantial connections to California, not Texas.  There are 12 named inventors.  According to the '578, '439, and '328 Patents, all named inventors reside in N.D. Cal. (Exs. H-J.)  For the '498 Patent, one of its three named inventors resides in N.D. Cal. (and on information and belief, one of the other two named inventors also now resides in N.D. Cal.).  (Ex. K.)  The third named inventor on the '498 Patent, Deog Kyoon Jeong, is located in Seoul, Korea, which is closer to N.D. Cal. than E.D. Tex.)  (Klein Decl. at ¶¶ 7-8.)

The prosecuting attorneys for the patents-in-suit are also located in N.D. Cal.  The '578 and '439 Patents were prosecuted by Alfred A. Equitz of Girard & Equitz LLP, located in San Francisco.  (*Id*. at ¶ 9.)  The '498 Patent was prosecuted by Greg. T. Sueoka, while employed at Fenwick & West's office in Palo Alto.  (*Id*. at ¶ 10.)  Mr. Sueoka has since founded Patent Law

Works, which maintains an office in Los Altos, California.  (*Id*. at ¶ 11.)  And the '328 Patent was prosecuted by Paul L. Hickman, Steven S. Kelley, and others at Perkins Coie's Menlo Park office.  (*Id*. at ¶ 12.)  These attorneys continue to work in the San Francisco Bay Area, and will likely be key third-party witnesses.  (*Id*. at ¶¶ 23-24.)

    **B.**  **Relevant Third Parties Have Substantial Connections to N.D. Cal.**

In its infringement contentions, Nexus alleges that Lenovo makes, sells, and offers for sale products that "comply with the DisplayPort standard."  (Ex. A at ¶¶ 2-8.)  The components that provide the accused functionality are provided to Lenovo by the DisplayPort Suppliers, which Nexus recognizes by its identification of NVIDIA's "NVS graphics cards" as one of the Accused Products.  (*Id*. at ¶ 5.)  Lenovo does not design or manufacture the video and graphics components installed on the Accused Products.  (*See* Declaration of Kurt Cranor in Support of Defendant's Motion to Transfer Venue ("Cranor Decl.") at ¶ 7.)  The DisplayPort Suppliers and the standard-setting organizations responsible for developing and maintaining the DisplayPort standard all reside in N.D. Cal.  (Klein Decl. at ¶¶ 17-19.)

    **1.**  **The DisplayPort Standard Was Developed and Is Administered in N.D. Cal., Not E.D. Tex.**

The DisplayPort standard is a video display standard for transferring video data between a source and a display.  (Klein Decl. at ¶ 28.)  The standard was developed by the Video Electronics Standards Association ("VESA").  (Cranor Decl. at ¶ 5.)  VESA's headquarters is located in Newark, California, in N.D. Cal.  (Klein Decl. at ¶ 13.)  VESA is responsible for developing and administering the DisplayPort standard, licensing its use and logo, and certifying DisplayPort-compliant technology through the VESA DisplayPort Compliance Program, which includes administering and evaluating product testing.  (Klein Decl. at ¶ 14.)  The development of, operation of, and compliance with the DisplayPort standard is highly relevant to the claims and defenses in this case, as Nexus's  infringement contentions rely on both Lenovo's products' compliance with the DisplayPort standard and VESA's documents describing the standard to prove infringement.  (Ex. M at ¶ 2.)

Further, there are standards besides DisplayPort for transferring video data between a source and a display. Those standards are regulated by other standard-setting organizations in N.D. Cal. which develop and promulgate technical standards for digital displays, including both High-Definition Multimedia Interface (HDMI) and Digital Visual Interface (DVI). (Klein Decl. at ¶¶ 16, 29.) The HDMI and DVI standards are relevant to the claims and defenses in this case. Specifically, the HDMI consortium was developed in part by Silicon Image, who owned and licensed the patents-in-suit prior to the filing of this case. (Klein Decl. at ¶ 15.) Silicon Image still owns HDMI Licensing, LLC, which is responsible for maintaining, administering, and licensing the HDMI standard. (Ex. L at ¶ 44.) HDMI Licensing, LLC and Silicon Image are both located in N.D. Cal. (*Id*. at ¶ 22; Klein Decl. at ¶ 16.) Silicon Image is also a party to a broad patent cross-licensing agreement with Intel related to data and video transmission on Intel's components and chipsets. (Ex. L at ¶ 46.) Those agreements are relevant to Lenovo's defenses including invalidity, non-infringement, affirmative defenses, and damages. Lenovo does not have access to this information, which can only be obtained live at trial from Silicon Image via the absolute subpoena power of N.D. Cal. (Cranor Decl. at ¶¶ 7-8.)

### 2. The DisplayPort Suppliers Are Located in N.D. Cal.

Lenovo sells computer products with components that incorporate DisplayPort technology provided by the DisplayPort Suppliers. (*Id*. at ¶ 7.) Those components include video and graphics cards. Intel's headquarters is in N.D. Cal., where it also maintains a research and development campus (Klein Decl. at ¶ 17.); NVIDIA's headquarters is also in N.D. Cal., where it also maintains an engineering office (*Id*. at ¶ 19.); and AMD's headquarters is also in N.D. Cal., where it also maintains an engineering office. (*Id*. at ¶¶ 18, 20-22.)

Lenovo does not develop or manufacture the components that provide the accused functionality. (Cranor Decl. at ¶¶ 5-7, 13.) The employees and engineers of the DisplayPort Suppliers will likely have relevant information regarding the development and operation of the allegedly infringing components. (*Id*. at ¶ 8.) In addition, the standard-setting organizations (*e.g*., standard-setting organizations for HDMI and DVI) will likely have relevant information

concerning the development of the various display interface standards, licensing, and the technical specifications. *Id*. These key third parties all reside in N.D. Cal. (Klein Decl. at ¶¶ 17-19.)

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), for the "convenience of the parties and witnesses" and "in the interest of justice," a court may transfer a civil action to any judicial district in which it could have been brought. 28 U.S.C. § 1404(a); *see In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*"). Section 1404(a) is intended to give the district court discretion to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *Droplets, Inc. v. E*TRADE Fin. Corp.*, No. 2:11-cv-255, 2012 U.S. Dist. LEXIS 111694, at *4 (E.D. Tex. Mar. 5, 2012).

In the Fifth Circuit, the "threshold" determination under Section 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If the claims could have been brought there, the district court must consider the convenience of the parties and witnesses in both forums balancing several private and public interest factors. *Id*. The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *see also In re TS Tech. USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws o[r] the application of foreign law." *Droplets*, 2012 U.S. Dist. LEXIS 111694, at *6 (internal quotations and citation omitted). The Plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314-315.

## IV.  ARGUMENT

### A.  This Dispute Could Have Been Brought in N.D. Cal.

There is no question that this lawsuit could originally have been filed in N.D. Cal.  In a patent infringement case, venue is proper "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  A corporate defendant "resides" in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  Lenovo sells and has sold the Accused Products in N.D. Cal.  (Cranor Decl. at ¶ 9.)  Lenovo is thus subject to personal jurisdiction in N.D. Cal. due to Lenovo's sales activities in the state.  Accordingly, the threshold requirement for transfer is satisfied because Nexus could have originally filed this case in N.D. Cal.

### B.  The Private Interest Factors Favor Transfer to N.D. Cal.

In determining whether the "convenience of parties and witnesses" justifies transfer under § 1404(a), courts in the Fifth Circuit consider "private interest" factors, including (1) the relative ease of access to sources of proof, (2) the availability of compulsory process to secure the attendance of witnesses, (3) the cost of attendance for willing witnesses, and (4) "all other practical problems that make the case's trial easy, expeditious, and inexpensive."  *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2:13-cv-00011-JRG, 2014 WL 459719, at *1 (E.D. Tex. Jan. 31, 2014) (*citing In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").  Here the private interest factors favor transfer to N.D. Cal.

#### 1.  Location of Sources of Proof Favors Transfer to N.D. Cal.

The first private interest factor is the relative ease of access to sources of proof, such as documents and physical evidence.  *See Volkswagen II*, 545 F.3d at 316.  The relative ease of access to physical sources of proof is considered in deciding a motion to transfer, despite technological advances in the use of electronic documents.  *Id*.  In analyzing this factor, courts consider the distance that documents and other physical evidence must be transported to the trial venue.  On *Semiconductor Corp. v. Hynix Semiconductor, Inc.,* No. 6:09-cv-390, 2010 WL

-7-

3855520, at *2 (E.D. Tex. Sept. 30, 2010).  The resolution of this factor "will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues."  *Id*.  "Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters."  *Digital Reg of Texas LLC v. Adobe Sys. Inc., et al.*, No. 6:11-cv-305- LED, slip. op. at 3 (E.D. Tex. Mar. 28, 2012) (Wilken, J.).

### (a) Most relevant documents reside in N.D. Cal.

The bulk of relevant documents and physical evidence in this case is located in N.D. Cal.  The most relevant evidence regarding the design, development, and operation of the Accused Products will come from the DisplayPort Suppliers including Intel, AMD, and NVIDIA.  (Cranor Decl. at ¶¶ 4-8.)  Nexus's infringement allegations focus on the operation of the Accused Products' processors, chipsets, and operating system all of which are provided by these third-party suppliers.  (*See* § II.B.2, *supra*.)  As such, this case will require significant third party discovery from Intel, AMD, and NVIDIA.  Given their headquarters and principal places of business, these third parties' relevant documents are likely to be in Santa Clara and Sunnyvale, both of which are within N.D. Cal.

Also, the patents-in-suit were all previously owned by Silicon Image whose headquarters is in N.D. Cal.  (Klein Decl. at ¶ 6.)  Nexus later obtained the patents-in-suit, which was recorded almost two months **after** the lawsuit was filed.  (Exs. D-G.)  Silicon Image, therefore, is likely to have information about the valuation and licensing of the patents-in-suit, as well as the prosecution, design, and development of the claimed inventions.

### (b) Prosecution documents regarding the patents-in-suit are located in N.D. Cal.

Documents related to prosecution of the patents-in-suit are likely located in N.D. Cal. where the named inventors and the attorneys who prosecuted the patents-in-suit.  The prosecuting attorneys for the patents-in-suit work in San Francisco, Palo Alto, and Menlo Park.

-8-

(Klein Decl. at ¶¶ 9-12.)   Because these prosecuting attorneys are in N.D. Cal., documents related to prosecution of the patents-in-suit are likely to be located in N.D. Cal., not in E.D. Tex.

### (c) Nexus's contacts with E.D. Tex. are recent, ephemeral, and an artifact of litigation.

Nexus has no apparent significant ties to Texas, let alone E.D. Tex.  Nexus was formed on June 12, 2014, just 30 days before suing Lenovo. (Ex. B.)  Nexus's Certificate of Formation indicates that its principal place of business is an office in Plano. (Klein Decl. at ¶ 25.)  The only known employee of Nexus is Jennifer Graff, (Ex. C.) who publicly identifies herself as an employee of Acacia Research Corp. in Newport Beach, California—not Plano.  (*Id*. at ¶¶ 4, 26.) Based on its recent formation and unstaffed Plano office, Nexus's true contact with E.D. Tex., if any, is nominal.

Consequently, Nexus is unlikely to have many, if any, relevant documents in E.D. Tex. unless it moved them here for the lawsuit shortly before filing the complaint.  Indeed, Nexus's ownership of the patents-in-suit was not even recorded with the USPTO until nearly two months after the lawsuit was filed.  It is unlikely that any relevant documents were in E.D. Tex. until shortly before the lawsuit was filed.  Nexus's contacts with this District are "recent, ephemeral, and an artifact of litigation," and its presence should be given no weight in the transfer analysis. *See In re Zimmer Holdings, Inc*., 609 F.3d 1378, 1381 (Fed. Cir. 2010).  As an E.D. Tex. court has explained, "it appears that the Federal Circuit has concluded that an entity that does not have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum is an 'ephemeral' entity." *See NovelPoint Learning LLC v. LeapFrog Enter., Inc*., No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) (J. Love) (*citing In re Zimmer Holdings*, 609 F.3d at 1381); *see also KlausTech, Inc. v. AdMob, Inc.*, No. 6:10-cv-39, Docket No. 50, Memorandum Opinion and Order on Motion to Transfer at 3 (E.D. Tex. Nov. 30, 2010) (J. Love) (*citing In re Zimmer Holdings*, 609 F.3d at 1381; *In re Microsoft Corp*., 2010 WL 4630219, at *3-4 (Fed. Cir. Nov. 8, 2010) (precedential order issued on January 5, 2011, *In re Microsoft Corp*., 630 F.3d 1361 (Fed.

Cir. 2011)).  Nexus appears to be such an ephemeral entity, and accordingly, its location in Plano should be given no weight.  For these reasons, this factor weighs heavily in favor of transfer.

### 2. The Compulsory-Process Factor Weighs Heavily in Favor of Transfer.

The second private interest factor is the Court's ability to compel non-party witnesses to attend trial.  *See Volkswagen II*, 545 F.3d at 316.  The third-party witnesses with knowledge of the accused DisplayPort functionality are California employees of Lenovo's suppliers:  Intel, AMD, and NVIDIA.  (Cranor Decl. at ¶¶ 7-8; Klein Decl. at ¶¶ 17-19.)  Additionally, the majority of the named inventors and prosecution attorneys are located in N.D. Cal.  (*See* § II.A, *supra*.)  Given the numerous key third-party witnesses located within the absolute subpoena power of N.D. Cal. (and outside this Court's reach to compel live testimony at trial), this factor weighs heavily in favor of transfer.  *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-cv-448, 2012 U.S. Dist. LEXIS 9545, at *11 (E.D. Tex. Jan. 9, 2012) (*citing In re Hoffmann- La Roche*, 587 F.3d 1333, 1337) ("'absolute subpoena power' (for depositions as well as trial) over non-parties, such as patent prosecution counsel, is a significant consideration in the venue analysis"); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09- cv-448, 2010 U.S. Dist. LEXIS 69536, at *39-40 (E.D. Tex. July 13, 2010) (granting motion to transfer, and noting that no non-party witnesses reside in the Eastern District of Texas, but that potentially important non-party witnesses were located in the transferee district);  *see also In re Genentech, Inc*., 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### 3. N.D. Cal. Is More Convenient for Willing Witnesses.

The convenience of willing witnesses also favors transfer to N.D. Cal.  "The convenience and cost of attendance for witnesses is an important factor in the transfer calculus."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  "When the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be

traveled." *Volkswagen II*, 545 F.3d at 317; *see also In re Nintendo Co., Ltd.*, 589 F.3d at 1199. Simply put, "it is more convenient for witnesses to testify at home." *Volkswagen II*, 545 F.3d at 317. Although the proposed venue need not be more convenient for every witness, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue." *See Droplets*, 2012 U.S. Dist. LEXIS 111694, at *13 (*citing In re Genentech*, 566 F.3d at 1345).

The relevant third party witnesses (Intel, AMD, and NVIDIA) are located in California. (*See* § II.B.2, *supra*.)  Similarly, Nexus's presumptive key witnesses, including its parent company's officers (in Newport Beach, California), inventors (San Francisco Bay Area), and prosecuting attorneys (San Francisco Bay Area) are in California, not Texas. (Klein Decl. at ¶¶ 17-19.) Marshall is about 1,880 miles from San Francisco. (Klein Decl. at ¶ 27.)  Traveling to Marshall would impose a significant inconvenience on all of these witnesses.  In contrast, no known witnesses are located in E.D. Tex.  (Cranor Decl. at ¶¶ 10-13.)

The majority of the parties' witnesses, non-party witnesses, and relevant documents are located in or near N.D. Cal., and Lenovo has no relevant operations, witnesses, or documents in E.D. Tex.  (*Id*. at ¶ 14.)  When coupled with Nexus's attempt to manufacture "home" venue in this Court, these facts make clear that N.D. Cal. is the most proper and clearly a more convenient forum for this matter.

### 4.     No Practical Concerns Favor This District Over N.D. Cal.

"Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'"  *In re EMC Corp.*, No. 142, 2013 U.S. App. LEXIS 1985, at *7 (Fed. Cir. Jan. 29, 2013) (*quoting Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).  Nexus has filed several related patent infringement cases against other defendants asserting the same patents-in-suit in both California and Texas.  On information and belief, no substantive issue has been addressed in any of these cases.  Nexus will not otherwise be prejudiced by a transfer of venue, particularly given that Nexus is already pursuing similar cases against other defendants in California, including ViewSonic (*Nexus Display Technologies LLC v. ViewSonic Corp*., Case No. 8:14-cv-01119, C.D. Cal.), BenQ (*Nexus Display Technologies LLC v. BenQ America Corp., et. al.,* Case

No. 8:14-cv-01118, C.D. Cal.), Sony (*Nexus Display Technologies LLC v. Sony Electronics Inc.*, Case No. 8:14-cv-01121, C.D. Cal.), and LG Electronics (*Nexus Display Technologies LLC v. LG Electronics, Inc., et. al.*, Case No. 8:14-cv-01122, C.D. Cal.).  These practical considerations, and the ability to transfer this case before extensive discovery or other substantial litigation activity begins, favor transfer.

      **C.**    **The Public Interest Factors Favor Transfer.**

           **1.**    **N.D. Cal. Has a Substantial Connection to, and Local Interest in, the Adjudication of this Case.**

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Volkswagen I*, 371 F.3d at 206.  Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues.  *Id*.

N.D. Cal. has a strong interest in this case because it is home to key witnesses including numerous named inventors.  It is home to the majority of the DisplayPort-compliant chipsets that allegedly practice the accused technology.  (Klein Decl. at ¶¶ 17-19.)  A strong connection also exists between the Accused Products and the communities of the San Francisco Bay Area, because Nexus's allegations "call[ ] into question the work and reputation" of Intel, AMD, NVIDIA, and their employees.  *Droplets*, 2012 U.S. Dist. LEXIS 111694, at *18 (*citing In re Hoffman La- Roche*, 587 F.3d at 1336).

In contrast, the Nexus "home" in Texas requires "close scrutiny" because it was incorporated just a month before, and recorded the new ownership to the patents-in-suit at the USPTO two months **after** filing this lawsuit.  *See In re Zimmer*, 609 F.3d at 1381.  It was apparently established solely for the purpose of patent litigation.  Such ties to E.D. Tex. do not create a local interest sufficient to outweigh that of N.D. Cal.

           **2.**    **The Remaining Public Interest Factors Are Neutral.**

The law governing the adjudication of the claims is neutral with regard to transfer.  Nexus asserts straightforward claims of patent infringement, raising no issues of state or foreign law.

Because both venues are equally situated to adjudicate this claim under federal patent law, these factors do not weigh for or against transfer. *See PersonalWeb Techs., LLC v. NEC Corp. of Am.,* No. 6:11-cv-655, 2013 U.S. Dist. LEXIS 46296, at *36-37 (E.D. Tex. Mar. 21, 2013) (Davis, J.) (finding this factor neutral in that "[p]atent suits are governed by federal law, and both [N.D. Cal. and E.D. Tex.] are equally capable of applying federal law to [patentee's] infringement claims").

Court congestion and time to trial are likewise neutral to the transfer analysis. Courts in this District have determined that assessing court congestion and time to trial was very speculative and, therefore, this factor was neutral. *See PersonalWeb*, 2013 U.S. Dist. LEXIS 46296, at *36 (determining that this factor was neutral "[b]ecause of the speculative nature of [the court congestion] statistics"). As in *PersonalWeb*, this factor does not weigh for or against transfer.

### D. Nexus's Choice of Forum Is Not Entitled to Deference.

"Fifth Circuit precedent clearly forbids treating Plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). Rather, the plaintiff's choice of venue is wholly accounted for in the moving party's burden of showing "good cause" for transfer. *Id.* Meeting that burden is easier in cases like this, when the "plaintiff's choice of forum is of minimal value when none of the parties," including the plaintiff, actually reside in this District. *Rock Bit Int'l, Inc. v. Smith Int'l., Inc.,* 957 F. Supp. 843, 844 (E.D. Tex. 1997). "[W]here none or few of the operative facts underlying the cause of action occur within the forum chosen by the plaintiff, the chosen forum is entitled to less consideration." *TV-3, Inc. v. Royal Ins. Co. of America*, 28 F. Supp. 2d 407, 411 (E.D. Tex. 1998).

Nexus claims to have an office in this District, but the office appears to be unstaffed; and the company was not even formed until just a month before (and the new ownership of the patents-in-suit was not recorded at the USPTO until almost two months **after**) filing the lawsuit. Nexus has no apparent presence or reason to be here other than to support venue. Because N.D. Cal. has a more substantial connection to and local interest in this case, this factor weighs

strongly in favor of transfer.  *See Technologies Web Techs, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 U.S. Dist. LEXIS 46296, at *44-45 (E.D. Tex. Mar. 21, 2013) (finding plaintiff's contacts with transferor forum outweighed defendants' contacts with transferee forum, and concluding that "this factor favors transfer").  Accordingly, Nexus's choice of forum should be afforded no weight.

## V.     CONCLUSION

When the relevant factors are weighed and balanced, N.D. Cal. is clearly a more convenient forum than this District.  Because the vast majority of Nexus's key witnesses including officers, inventors, and patent prosecution attorneys are in N.D. Cal.; there appears to be no documentary or other relevant evidence in this District; and there is no identified witness in this District, Lenovo respectfully requests that the Court transfer this case to the Northern District of California for the convenience of the parties and non-party witnesses, and in the interest of justice.

Dated: February 5, 2015	Respectfully submitted,

/s/ *Eric J. Klein*
Fred I. Williams (*Lead Attorney*)
State Bar No. 00794855
fwilliams@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
600 Congress Avenue, Suite 1350
Austin, Texas  78701
Telephone: 512.499.6218
Facsimile:  512.499.6290

Eric J. Klein
State Bar No. 24041258
eklein@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone: 214.969.2751
Facsimile:  214.969.4343

**ATTORNEYS FOR DEFENDANT
LENOVO (UNITED STATES) INC.**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel has complied with the meet-and-confer requirement in Local Rule CV-7(h) and this motion is opposed.  In particular, on February 4, 2015, I attended a personal conference by telephone with counsel for Plaintiff.  On February 5, 2015, counsel for Plaintiff indicated that it opposes this motion.  The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

Date:  February 5, 2015	By:   /s/ *Eric J. Klein*
		Eric J. Klein

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2015, a true and correct copy of the foregoing document was served on counsel of record for Plaintiff via electronic mail.

Date:  February 5, 2015                             By:     */s/ Eric J. Klein*
                                                                          Eric J. Klein

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7)(A), this is to certify that Defendant Lenovo (United States) Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), contains information and documents designated by Plaintiff as Confidential and/or Restricted – Outside Attorneys' Eyes Only under the Protective Order entered in the lead case on December 4, 2014 [Dkt. No. 57].

Date:  February 5, 2015                             By:     */s/ Eric J. Klein*
                                                                          Eric J. Klein